LEHAN, Acting Chief Judge.
This is an appeal from a final judgment which reformed an agreement for deed. The reformation resulted in the agreement providing that 9½ percent per annum interest is owed on a particular balance due from appellant Corinthian who entered into the agreement as purchaser of the real property involved. Among the issues on appeal is whether the reformation action was barred by so-called “statutory laches” under section 95.11(6), Florida Statutes (1985). The trial court decided it was not. We agree. We conclude that section 95.-11(6) is not applicable to an equitable reformation action. For that and other reasons explained in this opinion, we affirm.
The written agreement did not provide for interest on the balance due which is involved here, although it did provide for interest on another specified balance. The balance involved here represents the amount owed under a mortgage which ap-pellees had placed on the property calling for 9V2 percent per annum interest; the other balance represents the amount owed for appellees’ equity in the property. There was substantial evidence supporting the trial court’s conclusion that the failure to provide for interest was a mutual mistake resulting from a scrivener’s error. In fact, it is undisputed that both parties to the agreement had understood and agreed to the interest provided for in the agreement as reformed by the trial court. This was reflected in their testimony as well as that of appellees’ lawyer who admitted responsibility for the mistake and upon whom there was testimony that appellees placed reliance.
Some months before the filing by appel-lees of this suit for reformation of the agreement for deed, Corinthian contracted to sell its interest in the property to appellant Coastal who was to pay off Corinthian’s obligations under the agreement. A dispute then arose concerning the payoff figure on the agreement. Corinthian had been making the monthly payments on the balance involved here as required by the agreement, each of which had been in the same amount as that of the monthly payment made by appellees on the mortgage which that balance represented. The amount of the payoff figure under the agreement depended upon whether the payments Corinthian had been making on that balance included, as appellees contended, 9V2 percent per annum interest or, on the other hand, had, as appellants contended, been entirely against principal. If those payments had been entirely against principal, there would, contrary to the agreement and understanding of all concerned, be a substantial windfall at the expense of ap-pellees in the amount of the interest unpaid by Corinthian and paid by appellees on the *873 mortgage. It is undisputed that Coastal was aware of the mistaken omission of interest in the agreement for deed when it entered into its contract with Corinthian.
Appellants contend that appellees’ suit was barred by statutory laches under section 95.11(6) because the suit was not brought until 1986, which was seven years after the execution of the 1979 agreement for deed. Section 95.11(6) in pertinent part provides:
Laches shall bar any action unless it is commenced within the time provided for legal actions concerning the same subject matter regardless of lack of knowledge by the person sought to be held liable that the person alleging liability would assert his rights and whether the person sought to be held liable is injured or prejudiced by the delay.
Appellants’ contention is to the effect that under section 95.11(6) the “time provided for legal actions concerning the same subject matter" is four years through the application of the statute of limitations under section 95.11(3)(k) concerning an action “on a contract ... not founded on a written instrument” and that the four year period began in 1979.
We need not address whether if section 95.11(3)(k) controlled, the four year period under that statute would have begun in 1979. (Appellants’ argument is that the four year period began in 1979 because appellees then had a duty to know what the agreement said and were not prevented by appellants from so knowing; on the other hand, appellees’ argument includes the position that the four year period did not begin to run until 1986 because appellants placed reliance in 1979 upon their attorney for the correct drafting of the instrument and the mistake was not brought to their attention until 1986.) We conclude that section 95.11(3)(k) does not control.[1] The reason is that a legal action “on a contract” to which that section applies connotes an action to enforce a contract in the sense of holding a party to the stated terms of the contract. See Fla.Stat.Ann. § 95.11(2)(b), (3)(k) annotations of cases (West 1982 & Supp.1989). Such an action in our view is not, within the meaning of section 95.11(6), a “legal action[ ] concerning the same subject matter” as that of this equitable reformation action, as we will explain.
We readily agree with the observation that “with the passage of section 95.11(6) ... an element of uncertainty emerged into what had been an established area of the law.” Note, The Doctrine of Laches in Florida: A Statutory Hybrid?, 13 Stetson L.Rev. 446, 448 (1984). That uncertainty included whether with regard to a particular equitable action like that involved here there exists, within the meaning of section 95.11(6), a “legal action[] concerning the same subject matter.”
Engle v. Acopian, 432 So.2d 113 (Fla. 5th DCA 1983), appears to have been read as having interpreted section 95.11(6) to mean that the expiration of a statute of limitations period governing a legal action which is analogous to the equitable action in issue bars the equitable action. See Note, supra at 454, 455, 460. However, the En-gle opinion contains no explanation of its interpretation of section 95.11(6) which resulted in the expiration of the five year statute of limitations period under section 95.11(2)(b) (concerning suits “on a contract ... founded on a written instrument”) barring the equitable action to enforce a real estate restriction which was involved in that case. Nonetheless, the foregoing reading of Engle appears to be a rational explanation of Engle’s interpretation of section 95.11(6). The legal action which section 95.11(2)(b) bars and the type of equitable action involved in Engle were each to enforce a contract in the sense described above. Thus, those two actions were analogous to that extent.
Yet, we do not conclude that Engle calls for a reversal in this case through the application, as argued by appellants, of sec *874 tion 95.11(3)(k), which, like section 95.-ll(2)(b) which was involved in Engle, concerns an action “on a contract.” We conclude that such an action within the meaning of section 95.11(3)(k), which, as does section 95.11(2)(b), appears to connote an action to enforce a contract in the sense described above, is not sufficiently like or analogous to the equitable action involved here, which is to change the stated terms of a contract to reflect the mutual intentions of the parties. The basis for this conclusion is further explained below in our adoption of the interpretation by another appellate court of section 95.11(6).
That other appellate court interpretation is in City of Miami v. Gates, 393 So.2d 586 (Fla. 3d DCA 1981). Under the Gates interpretation, a “legal action[ ] concerning the same subject matter” as that of an equitable action within the meaning of section 95.11(6) must be the “equivalent to” the equitable action. Id. at 589 n. 9. In this context we construe the term “equivalent to” as referring to the cause of action and to connote “the same as,” as will be explained further below. Under this Gates interpretation, which we adopt, we conclude, as we also did under the foregoing Engle interpretation, that section 95.-11(3)(k) does not bar the equitable action in this case. The reason is that an action “on a contract” under that section appears to connote, as we have said, an action to enforce a contract in the sense described above, which is not equivalent to an action like that involved here which is, again, to change the stated terms of a contract to reflect the mutual intentions of the parties.[2] Nor do we conclude that there is any other statute of limitations governing a legal action which is equivalent to the equitable cause of action involved in this case.
The foregoing interpretation of “equivalent” action to connote the same cause of action in deciding whether there is a statute of limitations governing a legal action which is equivalent to ah equitable action is proper in our view for a number of reasons. For one thing, section 95.11(6) refers to a statute of limitations applicable to a legal action having “the same subject matter” (emphasis added) as that of the equitable action involved, and, as we have indicated, we interpret the term “subject matter” to mean the cause of action, as we conclude is a proper construction of the Gates interpretation. Without clear direction, which does not exist in section 95.-11(6), we will not give that section a more liberal interpretation which, by broadening the scope of that section through a more generalized interpretation of “subject matter,” would further dilute the long established doctrine of laches. See Akins v. Bethea, 160 Fla. 99, 33 So.2d 638, 640 (1948) (courts will not ascribe to the legislature an intent to depart significantly from fundamental rules of equity jurisprudence absent clear and explicit statutory language to that effect).
Also, the legislative intent in enacting section 95.11(6) may be interpreted, as we do, to have been simply to eliminate the potential incongruity of a particular action being subject to different limitations standards depending upon whether it was filed on the law or the equitable side. This is an interpretation which is rational. An interpretation which is rational is a proper interpretation of legislative intent behind a statute which contains no clear manifestation of intent, as is the case with section 95.-11(6). See Wakulla County v. Davis, 395 So.2d 540, 543 (Fla.1981).
Furthermore, legislative history behind section 95.11(6) supports our view. See Staff Analysis, House Committee on Judiciary, House Bill 895 (1974). That staff analysis contains the statement that the enactment of that section was to require “that courts exercising equity jurisdiction apply the doctrine of laches in accord with the legal limitation period in actions of an *875 equivalent nature.” That statement provides specific support for the use of “equivalent” in the Gates interpretation of section 95.11(6). More to the point, that statement, by referring to the “equivalent nature” of “actions,” supports our interpretation that the words “subject matter” which identify what shall be the “same” in an equitable action and a legal action, as the term “same subject matter” is used in section 95.11(6), refer to the cause of action. That is, the fundamental nature of an action is identified by looking to its type of cause of action, as illustrated by our above discussion of Engle. See also Webster’s New Twentieth Century Dictionary of the English Language 19 (1941), citing Blackstone (the word “action,” which “[i]n law [is] literally ... a suit or process by which demand is made of a right ... is also used for a right of action_” (emphasis in original)).
We discern from neither section 95.11(6) nor its legislative history any legislative intent to purport to abolish in all equity eases those aspects of the long established equitable doctrine of laches which section 95.11(6) abolishes. That type of intent would seem to have been involved if section 95.11(6) were interpreted, contrary to our interpretation, as referring to legal actions which are most closely, however distantly, analogous to the equitable action in issue or as referring to a conceivable legal action having a subject involving the same facts as those of the equitable action.[3]
Accordingly, we agree with the trial court that section 95.11(6) does not bar this suit. We conclude that section 95.11(6) is not applicable. Our basis is the above-explained lack of a statute of limitations period for a legal action which is equivalent to the equitable action involved here. Therefore, the equitable doctrine of laches, without statutory modification, was properly in issue. Under that doctrine the trial court was entitled to conclude from the evidence, as it did conclude, that appellees’ delay in filing suit was not unreasonable. The evidence not only included an explanation for appellees’ failure to have noticed and acted upon the scrivener’s error sooner but also showed a lack of prejudice to appellants who, while being aware of the error long before appellees testified they became aware of it, did not so advise appellees. See Gates, 393 So.2d at 589 n. 9.
As to the other contentions on appeal, we do not conclude there was reversible error. See Tsavaris v. NCNB National Bank, 497 So.2d 1338 (Fla. 2d DCA 1986) (appellate court will not reweigh evidence which includes sufficient evidence to support finding of trial court).
Affirmed.
PARKER and PATTERSON, JJ., concur.

. In this opinion we are addressing only whether section 95.11(6) applies. The use of a statute of limitations period as a guide in determining whether laches bars a suit in equity when, as in this case, section 95.11(6) is not applicable is not in question. See 35 Fla.Jur.2d Limitations and Laches § 87 (1982).

. Gates cites Smith v. Branch, 391 So.2d 797 (Fla. 2d DCA 1980) preceded by a "but cf" signal. Nonetheless, we do not conclude that Smith is either applicable to, or contains language controlling, this case. While Smith does contain dicta that "section 95.11(6) provides that laches automatically bars any action that would be barred by the statute of limitations,” id. at 798, Smith does not undertake to define what kind of legal action, the statute of limitations for which would bar an equitable action under section 95.11(6), is contemplated by section 95.-11(6).

. We do not agree with appellants’ thought provoking alternative argument, in response to the court’s questions at oral argument, to the effect that since section 95.11(3)(k) refers to a "legal or equitable action on a contract ...” and since this equitable action is in essence to enforce an oral contract to pay 9½ percent per annum interest, the action referred to in section 95.-ll(3)(k) is equivalent to this action. As we have said, we interpret section 95.11(6) to require that there be a statute of limitations applicable to a legal action which is equivalent to the equitable action involved. The equitable action involved here is not to enforce a contract to pay interest but is, as we have also said, a reformation cause of action to change the terms of the contract to reflect the mutual intentions of the parties. Indeed, in their response to appellees’ motion for attorney's fees (which we have denied by separate order) appellants assert that “the Reeders’ claim for reformation was not an attempt by the Reeders to ‘enforce’ their rights under the ... Agreement for Deed ...” and that "[i]n the current case, the Reeders have not had to enforce their reformed contractual rights under the Agreement for Deed.”